```
             IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF GEORGIA
                     COLUMBUS DIVISION

ERIN SHEPHARD MCLEMORE,           *

     Plaintiff,                   *

vs.                               *
                                       CASE NO. 4:19-CV-90 (CDL)
COLUMBUS CONSOLIDATED             *
GOVERNMENT et al.,
                                  *
     Defendants.
                                  *
```

O R D E R

Every tragedy cannot be remedied by a federal lawsuit. Without a violation of the United States Constitution, Plaintiff has no claim under the circumstances alleged in her complaint. Because the evidence does not establish a constitutional violation, Defendants' motion for summary judgment (ECF No. 29) is granted as to Plaintiff's federal claims. Finding that her remaining state law claims are best suited for adjudication in state court, the Court declines to exercise supplemental jurisdiction over those claims, and they are dismissed without prejudice.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material*

fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

FACTUAL BACKGROUND

This action arises from a motor vehicle collision between the vehicle in which Plaintiff was an occupant and a fleeing vehicle being pursued by Columbus Consolidated Government ("CCG") police officers.  Plaintiff claims that the pursuing officers, the chief of police, and the CCG violated her substantive due process rights.  More specifically, the record, when viewed in the light most favorable to Plaintiff, reveals the following.  On the evening of June 3, 2017, a Columbus Police Department ("CPD") radio dispatcher announced that a stolen vehicle was in the area near where CPD police officer David Rogers was located in Columbus, Georgia.  Rogers Dep. 39:14-21, ECF No. 32.  Rogers's vehicle was equipped with a tag reader, a device that scanned vehicles' license plates and ran them through various databases to determine if vehicles were stolen.  *Id.* at 41:3-13.  The tag reader alerted Rogers that he was driving behind the reported stolen vehicle while on Brown

Avenue near Cusseta Road. *Id.* 41:14-19. The driver of the stolen vehicle was Dezhaun Dumas.

After his tag reader alerted him that the vehicle was stolen, Rogers activated his emergency equipment, Dumas ran a red light, and Rogers began pursuing him. Blackstock Dep. 42:9-16, ECF No. 33. Once the pursuit arrived at the intersection of Martin Luther King Jr. Boulevard and Shepherd Drive, Nathan Norton, another CPD police officer, took over as the secondary officer in pursuit. Norton Dep. 35:4-6, ECF No. 34. Norton provided information about the location of the pursuit, traffic conditions, and the speed of the vehicles to other units. *Id.* at 56:7-10. According to Norton, the traffic was light during the pursuit. *Id.* at 61:24. As Dumas approached red lights, he did not stop but appeared to slow down to check for vehicles and pedestrians. Rogers Dep. 166:25-167:15. Rogers testified that Dumas's apparent caution provided "one of the reasons why [the pursuit] was allowed to continue." *Id.* at 148:3-14.

While Rogers and Norton were pursuing Dumas, supervising officer Matthew Blackstock monitored the radio from his vehicle but did not pursue Dumas. Blackstock Dep. 77:25-78:10. Blackstock testified that, as the supervisor, he did not feel the need to terminate the pursuit based on his observations. *Id.* at 85:1-7 ("I never saw anything in that pursuit during the time that I was supervising it that would have made me cut the pursuit.").

3

The officers eventually pursued Dumas across the 13th Street bridge from Columbus into Phenix City, Alabama. Rogers Dep. 146:23. Dumas then approached the intersection of 14th Street and 17th Avenue on 14th Street, ran a red light, and crashed into the McLemore's vehicle. Frank McLemore was driving, and Erin McLemore was a passenger. Frank sustained fatal injuries and died after the crash. Erin sustained serious injuries but survived.

Rogers's police vehicle had a dash camera, but it did not record the entire pursuit because of some unknown technical deficiency. *Id.* at 111:10-16.[1] Rogers explained that "it was working intermittently" and experiencing "malfunctions." *Id.* at 110:22-25. When questioned about whether "the failure to record . . . audio and video of the chase is a violation of the [CPD pursuit] policy," Rogers testified "[t]he system was activated at the time of the pursuit, so there wasn't a failure to activate the camera system. It was a problem with the physical camera system." *Id.* at 112:4-14.

Dumas eventually faced criminal charges in Alabama, and during his trial, Rogers testified that he had obtained warrants against Dumas for "theft of an automobile" and "fleeing to elude, aggressive driving, [reckless] driving, driving while his license is suspended, running red lights, and failure to maintain lane"

---

[1] Neither party provided a copy of this video to the Court.

4

and that he saw Dumas "run red lights," "speeding," and "fleeing" during the pursuit. Tr. of State of Ala. v. Dezhaun S. Dumas, Nos. CC 18-44, 45, & 46 25:2-22, ECF No. 42-2.

In June 2017, CPD's motor vehicle pursuit policy provided that "[i]t is the policy of the Columbus Police Department that a motor vehicle pursuit is justified ONLY when the necessity of immediate apprehension outweighs the level of danger created by the pursuit." Motor Vehicle Pursuit Pol'y 1, ECF No. 34-1. The policy described an officer's responsibilities in the context of initiating a pursuit: "The decision to initiate pursuit must be based on the pursuing officer's conclusion that the immediate danger to the public created by the chase is less than the immediate or potential danger to the public should the suspect remain at large." Id. at 3-16.2(A)(1). The policy further instructed that "[a] pursuit shall be terminated under one or more of the following conditions:

- In the opinion of the officer, the officer's Sergeant or the watch commander, the level of danger created by the pursuit outweighs the necessity for immediate apprehension.
- The suspect's identity has been established to the point that later apprehension can be accomplished and there is no longer any need for immediate apprehension.
- The pursued vehicle's location is no longer known or the distance between the pursuit and fleeing vehicle is so great that further pursuit is futile.
- The condition of the police vehicle is such that the officer's or other person's safety is unnecessarily jeopardized." Id. at 3-16.7.

5

The policy required that "officers activate the video [and] audio recording system during all vehicle pursuits. Failure to record both video and audio of a pursuit is a violation of policy and shall be indicated as such on the vehicle pursuit report." Rogers Dep. 110:2-7. The policy further provided that "[a]ny primary or backup unit sustaining damage to equipment or failure of essential vehicular equipment during the pursuit shall not be permitted to continue in the pursuit." Motor Vehicle Pursuit Pol'y 3-16.2(E).

DISCUSSION

Pursuant to 42 U.S.C. § 1983, Plaintiff alleges that Defendants violated her Fourteenth Amendment substantive due process rights. She brings individual and official capacity claims against the officers involved in the pursuit, supervisory liability claims against Ricky Boren, who was chief of police at the time, and municipal liability claims against CCG.[2]  As a

---

[2] Plaintiff also names CPD as a Defendant. "Sheriff's departments and police departments are not usually considered legal entities subject to suit, . . . but 'capacity to sue or be sued shall be determined by the law of the state in which the district court is held.'" *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (quoting Fed. R. Civ. P. 17(b)). "The Georgia Supreme Court has explained that 'in every suit there must be a legal entity as the real plaintiff and the real defendant. This state recognizes only three classes as legal entities, namely: (1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial persons as the law recognizes as being capable to sue.'" *Lawal v. Fowler*, 196 F. App'x 765, 768 (11th Cir. 2006) (per curiam) (quoting *Ga. Insurers Insolvency Pool v. Elbert Cnty.*, 368 S.E.2d 500, 502 (Ga. 1988)). CPD is not an entity subject to suit under Georgia law and is therefore entitled to summary judgment. Additionally, Plaintiff names a "John Doe" in her complaint, but does not address any such claims against a "John Doe" in her response to Defendants' motion for summary

6

preliminary matter, the Court notes that if Plaintiff cannot establish that the individual officers violated her constitutional rights, then all of her claims fail as a matter of law because each theory of liability requires her to show an underlying constitutional violation.  *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1308-09 (11th Cir. 2009) (finding that plaintiffs' § 1983 official capacity and supervisory liability claims failed because plaintiffs did not establish any underlying constitutional violations); *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (explaining that "to impose § 1983 liability on a municipality, a plaintiff must show[] that his constitutional rights were violated"); *see also Sanders v. City of Union Springs*, 207 F. App'x 960, 965-66 (11th Cir. 2006) (per curiam) (finding that plaintiffs' inability to establish a constitutional violation based on a high-speed chase meant their failure to intervene and failure to train/supervise claims failed as a matter of law).

As explained in the following discussion, existing law is clear that no constitutional violation occurred here.  Because this case does not present a close constitutional question and because resolution of the constitutional issue is dispositive of

---

judgment.  As such, those claims are abandoned.  *See Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").

7

all of the federal claims, the Court proceeds directly to whether Defendants violated the Fourteenth Amendment.[3]

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Supreme Court has concluded that this provision bars "certain government actions regardless of the fairness of the procedures used to implement them." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). An official violates the substantive component of the Due Process Clause when his conduct amounts to deliberate indifference to life and safety and shocks the conscience. *Id.* at 847. But a police officer does not violate "the Fourteenth Amendment's guarantee of substantive due process by causing death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender." *Id.* at 836. Rather, "in such circumstances only a

---

[3] If the individual defendants did not violate Plaintiff's constitutional rights, then they obviously did not violate clearly established law and would thus be entitled to qualified immunity as to Plaintiff's claims against them in their individual capacities. And if no constitutional violation occurred, no basis exists for Plaintiff's claim against CCG. Therefore, although the typical qualified immunity analysis does not necessarily require the Court to decide the constitutional violation because qualified immunity can be found even with a violation if the law was not clearly established, the Court finds it unnecessary to limit its determination here given that it must decide the constitutional question in its assessment of CCG's liability and given that the constitutional issue presented here has been previously and clearly resolved by binding precedent.

8

purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." *Id.*

For example, in *Lewis*, a police officer attempted to stop a motorcyclist, but instead of pulling over, the motorcyclist sped off, prompting the officer pursue him. *Id.* at 836-37. The motorcyclist wove in and out of traffic, and he and the officer reached speeds of up to 100 miles per hour. *Id.* at 837. The pursuit ended when the motorcyclist tipped over after attempting a sharp turn. *Id.* The officer slammed on his brakes but was unable to avoid the motorcyclist's passenger, who died on the scene. *Id.* The Supreme Court determined that the police officer's "instinct was to do his job as a law enforcement officer, not to induce [the motorcyclist's] lawlessness, or to terrorize, cause harm, or kill." *Id.* at 855. Moreover, there was "no reason to believe that [the officer's instincts] were tainted by an improper or malicious motive," so even if the officer had been reckless in his pursuit, his conduct did not shock the conscience and he could not be held liable under § 1983. *Id.*

Here, as in *Lewis*, Plaintiff has failed to identify any evidence in the record that the officers involved in the pursuit acted with a "purpose to cause harm unrelated to the legitimate object of arrest." *Id.* at 836. Plaintiff contends that the officers' conduct shocks the conscience because they violated

9

CPD's pursuit policy.[4] She argues that the officers were obligated to end the pursuit when Rogers's audio/video system malfunctioned and when the danger posed by the pursuit itself outweighed the risk posed by Dumas if he remained at large. And she relies upon her expert witness's conclusory opinion that the officers recklessly disregarded human life and should have ended the pursuit under the policy.

The policy, however, does not indicate that the audio/video system was "essential vehicular equipment" such that its malfunction required Rogers, let alone *all* pursuing officers, to end the pursuit. Nor does Plaintiff direct the Court to any specific evidence that the pursuit was more dangerous than foregoing the expedient apprehension of Dumas. Her expert's summary opinion does not help resolve this issue because her citations to it do not rest upon a factual foundation. They are merely conclusory. As the Eleventh Circuit has explained, "a party may not avoid summary judgment solely on the basis of an expert's

---

[4] Plaintiff also argues that the officers violated Blackstock's direct order to terminate the pursuit if it entered a neighborhood or urban street. But Plaintiff has not directed the Court to any evidence that Blackstock actually ordered the pursuing officers to terminate the pursuit. In fact, Blackstock testified that driving "sixty miles an hour is okay in a neighborhood with light traffic." Blackstock Dep. 70:13-16. Plaintiff's conclusory allegations that the pursuing officers disobeyed Blackstock's order do not save her claims from summary judgment. *See Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) (noting that the Eleventh Circuit "has consistently held that conclusory allegations without specific supporting facts have no probative value").

opinion that fails to provide specific facts from the record to support its conclusory allegations." *Evers*, 770 F.2d at 986; *see also Buckler v. Israel*, 680 F. App'x 831, 836 (11th Cir. 2017) (per curiam) (explaining that an expert's "general statements" were "not sufficient for a reasonable jury to find a pattern or practice of inadequate investigation").

Plaintiff's reliance upon Rogers's testimony at Dumas's criminal trial is likewise unavailing. Rogers testified that Dumas was fleeing, speeding, and running red lights. That kind of behavior, however, is typical of suspects in high-speed chases. *See, e.g.*, *Lewis*, 523 U.S. at 837 (suspect and police officer reached "speeds up to 100 miles an hour"); *Sanders*, 207 F. App'x at 962 (suspect "ran stop signs, almost hit a school bus, and ran a couple of cars off the road" during the pursuit). And a decision to continue a high-speed chase under such circumstances is certainly not a *per se* violation of the Fourteenth Amendment.

The Court finds that Plaintiff has pointed to no violation of Defendants' pursuit policy that rises to the level of a constitutional violation. But even if the officers violated the policy, "a mere policy violation, without more, does not establish a substantive due process violation." *Tillis v. Consol. Gov't of Columbus*, 430 F. Supp. 3d 1329, 1341 (M.D. Ga. 2019). As the Supreme Court has made clear, "only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the

11

element of arbitrary conduct shocking to the conscience, necessary for a due process violation" in the context of a high-speed police chase. *Lewis*, 523 U.S. at 836. Plaintiff has pointed to no evidence from which a reasonable jury could conclude that the officers involved in the pursuit acted with an intent to harm or were otherwise "tainted by an improper or malicious motive," and her failure to do so dooms her federal claims. *Id.* at 855.

## CONCLUSION

Because the undisputed evidence establishes that none of the individual Defendants violated Plaintiff's Fourteenth Amendment substantive due process rights, those Defendants are entitled to qualified immunity as a matter of law and thus summary judgment as to Plaintiff's federal law claims against them in their individual capacities. Without a federal constitutional violation, Plaintiff's remaining federal law claims likewise fail. Accordingly, Defendants' motion for summary judgment (ECF No. 29) is granted as to Plaintiff's § 1983 claims. The Court declines to exercise supplemental jurisdiction over Plaintiff' state law claims. *See* 28 U.S.C. § 1367(c)(3). Those claims are dismissed without prejudice.

IT IS SO ORDERED, this 11th day of August, 2021.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA